THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JARVIS CAMPBELL, Appellant. [826 NYS2d 267]—

Appeal by the defendant from a judgment of the Supreme Court, Kings County (Hall, J.), rendered April 9, 2003, convicting him of murder in the second degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is affirmed.

In the instant case, the jury convicted the defendant, Jarvis Campbell, of murder in the second degree, determining that he acted with depraved indifference to human life when he shot and killed the decedent, Demetrius Wright. We affirm the judgment of conviction, since a rational trier of fact could have reasonably found that the defendant acted not with intent to kill the victim, but rather with a recklessness evincing a depraved indifference to human life (*see People v Gonzalez*, 1 NY3d 464, 468 [2004]).

The defendant, in broad daylight, approached a group of three men, Kareem Durham, Jamel Bascomb, and the decedent, on a courtyard path located between two apartment buildings in the Brownsville section of Brooklyn. He then asked Durham, the decedent's cousin, "where that nigger Born at?" Durham replied, "Yo, we don't mess with them dudes." Durham and

Bascomb then saw the defendant reach into his waistband and, believing he was reaching for a gun, started running away from the defendant. As Bascomb ran, he observed, over his shoulder, that the decedent was also running away from the defendant. A moment later the defendant fired shots in the direction of the three fleeing men. A disinterested eyewitness testified that the defendant appeared to be smiling as he fired a total of five shots. The bullets missed Bascomb and Durham. However, one bullet struck the decedent in the head and he died shortly thereafter. The evidence indicated that the defendant and the decedent did not know each other. At the trial, Bascomb testified that the decedent had just recently moved to Brooklyn from North Carolina, that he did not know anyone, and had "no beef with nobody."

The defendant was indicted and charged with, inter alia, one count each of intentional murder (Penal Law § 125.25 [1]) and depraved indifference murder (Penal Law § 125.25 [2]). At the charge conference, the defense counsel argued that the depraved indifference murder count should not be submitted to the jury because the evidence established intentional, rather than reckless, conduct. The trial court determined that "there was some view of [the defendant] being reckless," and instructed the jury with respect to both depraved indifference murder and manslaughter in the second degree as a lesser-included offense. The jury acquitted the defendant of intentional murder and convicted him of depraved indifference murder.

Pursuant to Penal Law § 125.25 (2), a person is guilty of depraved indifference murder when, under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person (see People v Suarez, 6 NY3d 202, 208 [2005]; People v Payne, 3 NY3d 266, 270 [2004]; People v McMillon, 31 AD3d 136 [2006]). The Court of Appeals has determined that depraved indifference murder may not be properly charged in the overwhelming majority of homicides that are prosecuted in New York (see People v Suarez, supra at 207; People v Payne, supra at 270). Rather, because Penal Law § 125.25 (2) requires circumstances evincing a depraved indifference to human life, depraved indifference murder applies to only a small category of cases where the defendant's conduct is as morally reprehensible as intentional murder (see People v Suarez, supra at 207).

Indifference to the victim's life contrasts with the intent to take it (see People v Payne, supra at 270). "To rise to the level of depraved indifference, the reckless conduct must be 'so wanton,

so deficient in a moral sense of concern, so devoid of regard of the life or lives of others, and so blameworthy as to warrant the same criminal liability as that which the law imposes upon a person who intentionally causes the death of another' " (*People v Gonzalez, supra* at 468-469, quoting *People v Fenner,* 61 NY2d 971, 973 [1984]). "[D]epraved indifference is best understood as an utter disregard for the value of human life—a willingness to act not because one intends harm, but because one simply doesn't care whether grievous harm results or not" (*People v Feingold,* 7 NY3d 288, 296 [2006], quoting *People v Suarez, supra* at 214; *see People v McMillon, supra*). Depraved indifference to human life is a culpable mental state. In *People v Feingold* (*supra* at 295), the defendant's conviction of reckless endangerment in the first degree was reversed because the trier of fact, the court at a bench trial, determined that the defendant did not act with depraved indifference when he committed the act giving rise to the indictment, since, "[w]hile being reckless, the defendant's state of mind was not one of extreme wickedness, or abject moral deficiency, or a mischievous disregard for the near certain consequences of his irresponsible act". Instead, the trial court in *Feingold* determined that the defendant was depressed and that his act was the result of his focus on his own problems. However, the mental state of depraved indifference to human life can, like any other mens rea, be proved by circumstantial evidence (*id.* at 295).

This case is analogous to *People v Fenner (supra)* in which the Court of Appeals upheld a conviction of depraved indifference murder. In *Fenner,* the defendant, following a physical altercation with three or four men inside a poolroom, fired a gun at the group as they fled toward the front door to get away from the defendant. One of the men in the fleeing group was killed by the defendant. In upholding the conviction, the Court of Appeals reasoned that "[t]he number of shots fired, the number of persons fired at and the fact that they were running toward the door of the poolroom in an effort to get away from defendant . . . were sufficient to present a question for the jury concerning whether defendant evinced 'a depraved indifference to human life' " (*People v Fenner, supra* at 973).

In *People v Payne,* the Court of Appeals referred to the facts and circumstances in *Fenner* as an example of "homicides in which a defendant lacking the intent to kill (but oblivious to the consequences and with depraved indifference to human life) shoots into a crowd or otherwise endangers innocent bystanders" (*People v Payne, supra* at 271).

At bar, there was no evidence of any dispute between the de-

fendant and the decedent, that the defendant even knew the decedent, or was provoked before he shot and killed the decedent. Rather, the decedent was simply in the company of two other men, including Durham, who testified that he knew of "Born," and Bascomb, who recognized the defendant from high school. For reasons that were not established at trial, the defendant, after approaching the three men and having a brief conversation with Durham, pulled out a gun and fired it five times in the direction of the fleeing men. Under these circumstances, this case fits into the narrow category of cases where depraved indifference murder properly applies (*see People v Feingold, supra; People v Suarez, supra; People v Payne, supra; see also People v Webb,* 31 AD3d 796 [2006]).

Thus, the jury's determination that the defendant possessed the culpable mental state necessary to convict him of depraved indifference murder was supported by the record. The determination of the trier of fact should be accorded great weight on appeal and should not be disturbed unless clearly unsupported by the record (*see People v Garafolo,* 44 AD2d 86, 88 [1974]). Evidence that, before pulling out his firearm, the defendant apparently asked about the whereabouts of "Born" or that the defendant's brother was stabbed the night before the shooting does not necessarily lead to the conclusion that the shooting was the result of a dispute and therefore, was intentional.

Viewing the evidence in the light most favorable to the prosecution (*see People v Contes,* 60 NY2d 620 [1983]), we find that it was legally sufficient to establish the defendant's guilt of depraved indifference murder beyond a reasonable doubt. A rational jury could reasonably conclude that the defendant did not care whether harm would result when he commenced his shooting spree in the direction of the three fleeing men, and that this act was not just reckless, but evinced a depraved indifference to human life.

Moreover, upon the exercise of our factual review power, we are satisfied that the verdict of guilt was not against the weight of the evidence (*see* CPL 470.15 [2]).

The defendant's remaining contention, that he was deprived of a fair trial because of the admission of a portion of his videotaped statement to the police in which he detailed his drug business, does not warrant reversal. Miller, J.P., Adams, Goldstein and Covello, JJ., concur.